Case 1:14-cv-08986-CM   Document 1   Filed 11/12/14   Page 1 of 23

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
pkim@rosenlegal.com
Laurence M. Rosen, Esq. (LR 5733)
lrosen@rosenlegal.com
Kevin Chan (KC 0228)
kchan@rosenlegal.com
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

Counsel for Plaintiff



14 CV 8986



RECEIVED
NOV 12 2014
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILL BROWN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>RAYONIER, INC., DAVID NUNES, PAUL G. BOYNTON,  HANS E. VANDEN NOORT, AND H. EDWIN KIKER,<br><br>Defendants. | CASE No.:<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Will Brown, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included,

1

among other things, a review of the Defendants' public documents, United States Securities and Exchange Commission ("SEC") filings, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of Rayonier, Inc. ("Rayonier" or the "Company") between April 30, 2014 and November 10, 2014 (the "Class Period"), inclusive, seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j (b) and 78t (a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff Will Brown, as set forth in the accompanying certification, incorporated by reference herein, purchased Rayonier common stock at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant Rayonier is incorporated in North Carolina with its headquarters located in Jacksonville, Florida. The Company is a real estate investment trust and engages in the sale and development of real estate and timberland management as well as produces and sells cellulose fibers throughout the U.S., New Zealand, and Australia. In June 2014, Rayonier completed a spin-off company, Rayonier Advanced Materials, Inc. which is an independent and publicly traded company. During the Class Period, the Company's stock was traded on the NYSE under the symbol "RYN."

8.     Defendant David Nunes ("Nunes") was appointment Chief Operating Officer of Rayonier in May 2014. He assumed the role of Chief Executive Officer of the Company in June 2014.

9.     Defendant Paul G. Boynton ("Boynton") served as Chairman, President and Chief Executive Officer of Rayon from the beginning of the Class Period until June 2014.

10.     Defendant Hans E. Vanden Noort ("Vanden Noort") was a Senior Vice President and Chief Financial Officer from the beginning of the Class Period until May 2014.

11.     Defendant H. Edwin Kiker ("Kiker") has been the Company's Chief Financial Officer since May 2014.

12.     Nunes, Boynton, Vanden Noor, and Kiker are collectively referred to hereinafter as the "Individual Defendants."

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

13.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of Rayonier during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

14.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Rayonier's common stock was actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by Rayonier or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

15.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

16.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

4

17.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether the misstatements and omissions alleged herein were made with scienter;

(c)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Rayonier; and

(d)    to what extent the members of the Class have sustained damages, and the proper measure of damages.

18.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

19.    The Class Period begins on April 30, 2014 when Rayonier filed with the SEC a materially false and misleading Form 10-Q for the quarter ended March 31, 2014 (the "1Q14 10-Q").

20.    The 1Q14 10-Q contained false and misleading financial statements because they understated Rayonier's depletion expense in the cost of goods sold, also referred to as "Cost of sales." Also included in the 1Q14 10-Q was the following misstatement the Company made about its

5

internal controls: "In the quarter ended March 31, 2014, based upon the evaluation required by paragraph (d) of SEC Rule 13a-15, there were no changes in our internal control over financial reporting that would materially affect or are reasonably likely to materially affect our internal control over financial reporting."

21.     The 1Q14 10-Q was signed by Defendant Vanden Noort. Accompanying the 1Q14 10-Q were the executed Sarbanes-Oxley Act of 2002 ("SOX") certifications of Defendants Boynton and Vanden Noort falsely attesting to the accuracy of the 1Q14 10-Q.

22.     On July 3, 2014, the Company filed unaudited pro forma condensed consolidated income statements from continuing operations on Form 8-K with the SEC. The financial statements in the Form 8-K were false and misleading because they failed to properly calculate the Company's Cost of sales. The 8-K was signed by Defendant Kiker.

23.     On August 8, 2014, Rayonier filed with the SEC a materially false and misleading Form 10-Q for the quarter ended June 30, 2014 (the "2Q14 10-Q").

24.     The financial statements contained in the 2Q14 10-Q were false and misleading because they understated Rayonier's depletion expense in cost of goods sold which reflected an inaccurate figure for Cost of sales. Also included in the 2Q14 10-Q was the following misstatement the Company made about its internal controls: "In the quarter ended June 30, 2014, based upon the evaluation required by paragraph (d) of SEC Rule 13a-15, there were no changes in our internal control over financial reporting that would materially affect or are reasonably likely to materially affect our internal control over financial reporting."

25.   The 2Q14 10-Q was signed by Defendant Kiker. Accompanying the 2Q14 10-Q were the executed SOX certifications of Defendants Nunes and Kiker falsely attesting to the accuracy of the 2Q14 10-Q.

## **The Truth Begins to Emerge**

26.   On November 10, 2014 the Company issued a press release entitled "Rayonier Reports Third Quarter Results." It reported on its third quarter results, notified investors about the Company's internal review and disclosed the need to restate its previously issued financial statements. The press release states in relevant part:

> Realigns Strategy and Operations to Improve Sustainability of its Timberland Resources and Increase Transparency
>
> JACKSONVILLE, Fla.--(BUSINESS WIRE)--Rayonier Inc. (RYN) ("Rayonier") today issued its third quarter results and announced the following recent business and operational developments:
>
> - Announces results of internal review of the Company's operations
> - Realigns strategy and lowers future expected harvest volumes to support sustainable timber harvesting
> - Revises guidance for 2014 and provides outlook for 2015
> - Reduces regular quarterly dividend
> - Restates financial results for the first and second quarters of 2014 to correct understatements in depletion expense and corresponding overstatements in income from continuing operations
> - Amends Form 10-K to correct merchantable timber inventory and reflect material weakness
>
> ***
>
> Restatement of Financial Results
>
> **As discussed above, Rayonier included in merchantable timber inventory for 2014, timber in specially designated parcels located in restricted, environmentally sensitive or economically inaccessible areas, which was incorrect, inconsistent with its definition of merchantable timber inventory, and a significant change from prior years. As a result, Rayonier concluded that it**

7

understated depletion expense in cost of goods sold by approximately $2.0 million in each of the quarterly periods ended March 31, 2014, and June 30, 2014, which resulted in a corresponding overstatement of income from continuing operations of $1.9 million and $2.0 million, respectively, in those periods. In addition, management determined that there was a material weakness in Rayonier's internal controls related to merchantable timber inventory as of December 31, 2013, March 31, 2014, June 30, 2014 and September 30, 2014. Accordingly, Rayonier has filed amendments to its Forms 10-Q for the quarterly periods ended March 31, 2014 and June 30, 2014 and restated its interim consolidated financial statements for those periods. Rayonier determined that errors in depletion expense calculated in the years ended December 31, 2013, and 2012 were immaterial and did not require restatement. The cumulative effect of the immaterial errors in depletion expense for these and prior periods are reflected in Rayonier's financial statements for the third quarter of 2014 as an out-of-period adjustment.

A summary highlighting the impact of the restatement is included in Schedule F of this release.

Rayonier will also file an amendment to its Form 8-K, dated July 3, 2014, to restate its unaudited pro forma condensed consolidated balance sheet as of March 31, 2014, and unaudited pro forma condensed consolidated statements of income from continuing operations for the three months ended March 31, 2014, giving effect to the spin-off.

The Company advises investors that these previously filed financial statements for the indicated periods, and the Company's previously issued 2014 full year guidance, should no longer be relied upon.

Due to the material weakness discussed above, Rayonier also advises investors that both management's assessment and the report of Rayonier's independent registered public accounting firm, Ernst & Young LLP ("E&Y"), on internal control over financial reporting included in the Initial Form 10-K should no longer be relied upon. Rayonier is filing an amendment to its Initial Form 10-K to, among other things, revise management's report on internal control over financial reporting and the report of Rayonier's independent registered public

accounting firm, in each case, disclosing management's determination that, as of December 31, 2013, there was a material weakness in Rayonier's internal control over financial reporting.

Management and the Audit Committee have discussed these matters described above with E&Y.

More detailed information related to the restatement and material weakness will be available in a Form 8-K that Rayonier will file today with the SEC. More detail related to the internal review and Rayonier's new standalone strategy is available in its Quarterly Report on Form 10-Q for the period ended September 30, 2014, which Rayonier will file today with the SEC.

Rayonier does not expect the internal review and restatement to have an adverse impact on its available borrowings under existing credit facilities.

(emphasis added)

27.     On November 10, 2014, the Company filed a Form 8-K with the SEC announcing that previously issued financial statements could no longer be relied upon. The announcement states in relevant part:

Item 4.02 Nonrelieance on Previously Issued Financial Statements or a Released Audit Report or Completed Interim Review

On June 27, 2014, Rayonier spun off its Performance Fibers business to its shareholders as a newly formed publicly traded company named Rayonier Advanced Materials Inc. Following the spin-off, **new management of Rayonier conducted a review of its operations and business strategies and identified issues related to its historical timber harvest levels, its estimate of merchantable timber inventory and the effect of such estimate on its calculation of depletion expense.** At the direction of the Board of Directors of Rayonier (the "Board"), management commenced an internal review into these matters with the assistance of independent counsel, forensic accountants and financial advisers. On November 10, 2014, Rayonier issued a press release announcing the results of the internal review.

**As a result of the internal review, Rayonier concluded that it included in merchantable timber inventory for 2014, timber in specially designated parcels located in restricted, environmentally sensitive or economically inaccessible**

areas, which was incorrect, inconsistent with its definition of merchantable timber inventory, and a significant change from prior years. As a result, Rayonier concluded that it understated its depletion expense in cost of goods sold (referred to as "Cost of sales" in its consolidated statements of income) by approximately $2.0 million in each of the quarterly periods ended March 31, 2014 and June 30 2014, which resulted in a corresponding overstatement of income from continuing operations of $1.9 million and $2.0 million, respectively, in those periods. In addition, management determined that there was a material weakness in Rayonier's internal controls related to merchantable timber inventory, as discussed under Item 8.01 of this Current Report on Form 8-K.

As a result of the foregoing, management of Rayonier recommended to the Audit Committee of the Board (the "Audit Committee"), and the Audit Committee concluded, on November 7, 2014, that **Rayonier's interim consolidated financial statements for the quarters ended March 31, 2014 and June 30, 2014, its unaudited pro forma condensed consolidated balance sheets as of March 31, 2014, its unaudited pro forma condensed consolidated statements of income from continuing operations for the three months ended March 31, 2014 and the guidance provided by Rayonier for 2014 should no longer be relied upon.**

Accordingly, Rayonier is filing amendments to its Forms 10-Q for the quarterly periods ended March 31, 2014 and June 30, 2014 and restating its interim consolidated financial statements for those periods. Rayonier is also filing an amendment to its Form 8-K dated July 3, 2014 restating its unaudited pro forma condensed consolidated financial statements as of and for the three months ended March 31, 2014 giving effect to the spin-off of the Performance Fibers business. Rayonier determined that errors in depletion expense calculated in the years ended December 31, 2013 and 2012 were immaterial and did not require restatement. The cumulative effect of the immaterial errors in depletion expense for these and prior periods are reflected in Rayonier's financial statements for the third quarter of 2014 as an out-of-period adjustment.

Rayonier and the Audit Committee have discussed these matters with Ernst & Young LLP, Rayonier's independent registered public accounting firm ("E&Y").

Rayonier does not expect the internal review and restatement to have an adverse impact on its available borrowings under its existing credit facilities.

(emphasis added)

28.      The November 10th Form 8-K also included a section disclosing material weaknesses in Rayonier's internal controls. The press release states in relevant part:

Item 8.01

Internal Control Over Financial Reporting

In connection with the preparation of annual and quarterly financial statements, Rayonier management is responsible for establishing and maintaining adequate disclosure controls and procedures, which are established to ensure that material information relating to Rayonier and its consolidated subsidiaries is made known to the officers who certify Rayonier's financial reports and the Board. This evaluation includes an assessment of Rayonier's internal controls over financial reporting, which are designed to provide reasonable assurance regarding the reliability of Rayonier's financial reporting and the preparation of Rayonier's financial statements. In connection with the audit of Rayonier's consolidated financial statements for the fiscal year ended December 31, 2013, E&Y was responsible for auditing both (i) the financial statements to obtain reasonable assurance about whether they are free of material misstatement, and (ii) the effectiveness of Rayonier's internal control over financial reporting.

**Management and E&Y originally concluded that there was not a material weakness in Rayonier's internal control over financial reporting as of December 31, 2013, and this conclusion was reflected in Rayonier's Annual Report on Form 10-K for the fiscal year ended December 31, 2013 (the "Initial Form 10-K"). Subsequent to the filing of the Initial Form 10-K and in connection with the restatement discussed under Item 4.02 of this Current Report on Form 8-K, under the direction of Rayonier's Chief Executive Officer and Chief Financial Officer, management conducted a reevaluation of the effectiveness of Rayonier's internal control over financial reporting. After extensive consultation with E&Y and Rayonier's forensic accountants, management has now concluded that Rayonier did not maintain effective control, as of December 31, 2013, over the accounting for depletion expense. Specifically, Rayonier's controls related to the preparation and review of the annual depletion calculation which commenced in 2013 were not adequate to ensure that the changes in depletion rate estimates used to recognize depletion expense in 2014 were in accordance with accounting principles generally accepted in the United States of America. Further, these controls relied, in part, on electronic data from information technology systems with ineffective user access and program change management general controls. Accordingly, Rayonier's management has now concluded that its internal control over financial reporting was ineffective at December 31, 2013 based on the aggregation of these deficiencies. E&Y has reached the same conclusion. As such, both management's assessment and the report of E&Y on internal control over financial reporting as of December 31, 2013 should no longer be relied upon.**

E&Y has not withdrawn its audit report on the financial statements included in the

Initial Form 10-K. Rayonier is filing an amendment to its Initial Form 10-K to, among other things, revise the Management's Report on Internal Control Over Financial Reporting and the Report of Independent Registered Public Accounting Firm related to internal control over financial reporting, in each case, disclosing **management's determination that, as of December 31, 2013, there was a material weakness in Rayonier's internal control over financial reporting.** However, Rayonier has concluded that the existence of this material weakness did not result in a material misstatement of its financial statements included in the Initial Form 10-K.

**Because this material weakness was not adequately remediated as of March 31, 2014, June 30, 2014 or September 30, 2014, Rayonier's internal control over financial reporting was ineffective at those dates as well.**

(emphasis added)

29.     On November 10, 2014, the Company filed an amendment to the Form 8-K filed on July 3, 2014. The amended Form 8-K contained an updated Cost of sales figures as well as stating in relevant part:

**This Current Report on Form 8-K/A is being filed as Amendment No. 1 (this "Amendment") to the Current Report on Form 8-K of Rayonier Inc. (the "Company") originally filed with the Securities and Exchange Commission (the "SEC") on July 3, 2014 (the "Initial Report") to amend and restate its unaudited pro forma condensed consolidated statements of income from continuing operations and balance sheets as of and for the three months ended March 31, 2014 included in the Initial Report under Item 9.01.** The Initial Report disclosed that, on June 27, 2014, the Company spun off its Performance Fibers business to its shareholders as a newly formed publicly traded company named Rayonier Advanced Materials Inc.

**Following the spin-off, new management conducted a review of the Company's operations and business strategies and identified issues related to its historical timber harvest levels, its estimate of merchantable timber inventory and the effect of such estimate on its calculation of depletion expense in each of the quarterly periods ended March 31, 2014 and June 30, 2014.** At the direction of the Company's Board of Directors, management commenced an internal review into these matters with the assistance of independent counsel, forensic accountants and financial advisers. **As a result of the internal review, the Company concluded that it included in merchantable timber inventory for 2014, timber in specially designated parcels located in restricted, environmentally sensitive or economically inaccessible areas, which was incorrect, inconsistent with its**

12

definition of merchantable timber inventory, and a significant change from prior years. As a result, the Company concluded that it understated its depletion expense in cost of goods sold (referred to as "Cost of sales" in the Company's consolidated statements of income) by approximately $2.0 million in each of the quarterly periods ended March 31, 2014 and June 30, 2014, which resulted in a corresponding overstatement of income from continuing operations of $1.9 million and $2.0 million, respectively, in those periods. In addition, management determined that there was a material weakness in the Company's internal controls related to merchantable timber inventory. Accordingly, the Company has filed amendments to its Forms 10-Q for the quarterly periods ended March 31, 2014 and June 30, 2014 and restated its interim consolidated financial statements for those periods. The Audit Committee's findings did not impact previously reported unaudited pro forma condensed consolidated statements of income from continuing operations for the fiscal years ended December 31, 2013, December 31, 2012 or December 31, 2011.

As a result of the foregoing, the Company has filed with the SEC this Amendment and its restated unaudited pro forma financial statements giving effect to the spin-off, attached hereto as Exhibit 99.1. The Company has not modified or updated disclosures presented in the Initial Report, except to reflect the effects of the restatement of the Company's unaudited pro forma condensed consolidated statements of income from continuing operations and balance sheets as of and for the three months ended March 31, 2014, as described above. Accordingly, this Amendment does not reflect events occurring after the Initial Report, except as noted above, and this Amendment continues to speak as of the date of the Initial Report.

(emphasis added)

30.     On November 10, 2014 the Company held a conference call to discuss third quarter 2014 earnings and results of the internal review. On this conference call, Defendant Nunes stated:

And lastly, with regard to the internal review, as a result of the incorrect conclusion of certain timber in our merchantable timber inventory as of year-end 2013, **we concluded that we understated depletion expense and cost of goods sold for each of the first two quarters of 2014, which led to a corresponding overstatement in our income from continuing operations for the same periods. Accordingly, we are restating our financials for the first two quarters of 2014 and filing amendments to our Form 10-Q.**

31.     This announcement shocked the market and caused the Company's stock fall $5.08 per share, or about 15%, to close at $28.82 per share on November 10, 2014.

32.     Had the Plaintiff and the Class been aware of this adverse information they would not have purchased the Company's securities at all or would not have purchased such securities at the artificially inflated prices at which they did.

## Applicability of Presumption of Reliance:
## Fraud-on-the-Market Doctrine

33.     At all relevant times, the market for Rayonier common stock was an efficient market for the following reasons, among others:

(a)     The Company's stock met the requirements for listing, and was listed and actively traded on NYSE, a highly efficient and automated market;

(b)     During the class period, on average, over hundreds of thousands of shares of Rayonier stock were traded on a weekly basis, demonstrating a very active and broad market for Rayonier and permitting a very strong presumption of an efficient market;

(c)     Rayonier regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d)     Numerous FINRA member firms were active market-makers in Rayonier stock at all times during the Class Period; and

(e)     Unexpected material news about Rayonier was rapidly reflected and incorporated into the Company's stock price during the Class Period.

34.     As a result of the foregoing, the market for Rayonier's common stock promptly digested current information regarding Rayonier from all publicly available sources and reflected such information in Rayonier's stock price. Under these circumstances, all purchasers of Rayonier's

common stock during the Class Period suffered similar injury through their purchase of Rayonier's common stock at artificially inflated prices, and a presumption of reliance applies.

## ECONOMIC LOSS/LOSS CAUSATION

35.    The market for Rayonier's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Rayonier's securities traded at artificially inflated prices during the Class Period. Plaintiffs and other members of the Class purchased or otherwise acquired Rayonier's common stock relying upon the integrity of the market price of Rayonier's securities and market information relating to Rayonier, and have been damaged thereby.

36.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Rayonier's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

37.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Rayonier's business and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Rayonier and its business and operations, thus causing the Company's common stock to be overvalued and

15

artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

38.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Rayonier's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

40.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Rayonier's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

41.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

16

continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Rayonier as specified herein.

42.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Rayonier's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Rayonier and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Rayonier's securities during the Class Period.

43.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

44.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Rayonier's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

45.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Rayonier's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Rayonier's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Rayonier's securities during the Class Period at artificially high prices and were or will be damaged thereby.

46.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Rayonier's financial results,

18

which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Rayonier's securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

47.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

48.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

49.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Rayonier within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had

19

unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

52.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

53.     As set forth above, Rayonier and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

54.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

55.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 12, 2014

Respectfully submitted,

THE ROSEN LAW FIRM, P.A.

Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
Kevin Chan, Esq. (KC 0228)
275 Madison Ave, 34th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: kchani@rosenlegal.com

Counsel for Plaintiff

21

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Rayonier, Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Rayonier, Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

**First name:** Willis
**Middle initial:** N
**Last name:** Brown
**Address:** REDACTED
**City:**
**State:**
**Zip:**
**Country:**
**Facsimile:**
**Phone:**
**Email:**



Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 10/13/14 | 200 | 32.53 |

7. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate:          **YES**

## Certification for Willis Brown (cont.)

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.          **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic
Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 11/10/2014